**In re APACHE PRODUCTS COMPANY, Debtor.**

**No. 02–20896–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 16, 2004.

W. Keith Fendrick, Lori V. Vaughan, Mark J. Wolfson, Foley & Lardner, Lead Attorney, Tampa, FL, for Debtor.

## *ORDER ON APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES*

(Doc. No. 605)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

The matter under consideration in the Chapter 11 case of Apache Products Company (Debtor) is an Application for Allowance and Payment of Administrative Expenses (Doc. No. 605), filed by Premier Industries, Inc. (Premier). Premier, in its Application, seeks allowance as a cost of administration item entitled to be treated as a first priority claim pursuant to Section 507(a)(1) of the Code in the amount of $187,899. The Debtor interposed its Objection (Doc. No. 641), which was duly scheduled and heard by the undersigned. This Court now makes the following findings of facts and conclusions of law as established at the final evidentiary hearing.

Prior to the commencement of this Chapter 11 case, the Debtor operated two manufacturing facilities, one in Lakeland, Florida, and one in Anderson, South Carolina (Anderson facility). The Anderson facility was leased from Eagle Polyiso Corporation (Eagle). In addition to the manufacturing plant, the Debtor also maintained its administrative offices at the Anderson facility.

On October 18, 2002, the Debtor ceased all of its manufacturing operations at the Anderson facility, laid off all of its employees who were involved in the manufacturing operation, and its activity was limited for the maintenance of its administrative offices at the Anderson facility. The Debtor continued to operate its Lakeland facility until the entire operation was sold to Premier. Premier, who purchased the Lakeland facility as an ongoing business operation, continue to and still operates the Lakeland facility with the same employees and using the same equipment that was used by the Debtor before the sale.

On July 8, 2003, Debtor entered into an Asset Purchase Agreement (Agreement) with Premier (Db.Ex. 10). In conjunction with the Agreement, the Debtor also entered into a sublease agreement for the Anderson facility with Premier (Db.Ex. 11). The request for approval of the Agreement was granted by this Court, which entered its order approving the sale of the properties and provided the following: (1) authorizing the Debtor's sale of assets free and clear of liens and encumbrances; (2) approval of an asset purchase agreement involving both facilities of the Debtor; (3) approving the leases of the property in Anderson; and (4) approving the assumption and assignment of certain executory contracts and unexpired leases in connection with the sale entered into on September 10, 2003 (Premier Ex. 1) (Sale Order).

On February 12, 2004, Premier filed its Application. In the Application, paragraph 7, Premier recites that section 8 of the Sale Order provides as follows:

> All amounts to be paid to Purchaser pursuant to the Agreement shall constitute administrative expenses under Sections 503(B) and 507(a)(1) of the Bank-

ruptcy Code and shall be immediately payable if and when any such obligations of Seller arise under the Agreement, without any further order of the Court; *provided, however,* that Seller shall have the right to contest the validity and amount of such asserted claim.

It is the contention of Premier that this paragraph is applicable to both the facility at Anderson and the facility at Lakeland, Florida. Particularly, Premier relies on Section 3.10 of the Agreement, which sets forth a warranty of the Debtor that it complied with the laws of court orders and Section 3.12 in which the Debtor warranted that it is in compliance with all environmental requirements. It is the contention of Premier that the Debtor breached both of these warranties and as a result, it has incurred expenses which pursuant to the Agreement set forth in Section 8 of the Sale Order, is entitled to be an administrative priority treatment and to be paid in full.

In its Objection, the Debtor contends that the entire Application of Premier is based on the premise that it acquired under the Agreement more than just personal property of the Anderson facility but an ongoing manufacturing operation or that it purchased an ongoing business, as distinguished from the physical assets still located on the premises.

The Application under consideration deals only with the Anderson facility and there is no dispute between the parties that Premier acquired the Lakeland facility as an ongoing business by taking over the entire operation, including the assumption of all liabilities related to the operation and continue the operation with the same employees as had been conducted before by the Debtor. As noted earlier, more than 10 months that have passed since the Debtor had used the Anderson facility to manufacture any products. The Debtor had been attempting for some time to sell the remaining equipment at the Anderson facility.

Premier was given the full opportunity to conduct due diligence before entering into the Agreement, that what permits there were in the Debtor's possession and the lack of the Debtor's operations (Db.Ex. 10C), including Anderson's air permit dated August 4, 1999, together with a cover letter showing the permit was valid through July 2004. There is no evidence in this record to support this proposition urged by Premier that the Debtor was under any obligation to pay costs necessary for Premier to pass a Fire Marshal's inspection after Premier was ready to open a new line of business at the Anderson facility.

In this connection, it should be pointed out that the prime lease between the Debtor and Eagle, which was assigned to Premier, provided in paragraph 6.1 that "Tenant shall have no obligation to make any repairs or improvement of a capital nature." (Db.Ex. 12). The sublease specifically provided in paragraph 13 that Article 6 of the Anderson lease is fully incorporated in the sublease and Premier was substituted as a tenant under the Anderson lease.

Based on the foregoing, this Court is fully satisfied that Premier did not purchase an ongoing business operation at the Anderson facility and purchased nothing more than the physical assets located at that place. Unlike in Lakeland, Premier did not hire the former employees of the Debtor for the simple reason at the time the Agreement was entered into, the Debtor no longer had any employees who were involved in the manufacturing operation. While it is true that the word "business" was used in the Agreement, clearly that could have been intended only to refer to the Lakeland operation, while in fact Pre-

mier purchased an ongoing business by assuming the entire manufacturing operation, including employing the former employees of the Debtor.

The only witness offered by Premier at the final evidentiary hearing admitted that he was first employed by Premier in October 2003, or almost three months after the execution of the Agreement. The witness admitted that he had not visited the Anderson facility since September 2002, more than 13 months later and that he had no idea what was the activity on the Anderson facility on July 8, 2003, the date the Agreement or asset sale was executed.

It is without dispute that it was not until November 2003 or several months after the date of the Agreement that Premier began installing a "shapes" business at the Anderson facility, a business totally different from the one conducted by the Debtor prior to the time it ceased any manufacturing operation.

During the late 2003, Premier bought four molding machines; installed a new bead bag system; tore down as scrap some of the Anderson equipment; and spent almost $800,000 to get the Anderson facility ready for the new operations planned by Premier. It was not only after Premier had done all of this work that Premier asked the Fire Marshal to come out and inspect the facility.

In sum, this Court is satisfied that Premier did not purchase at the Anderson facility anything but the leftover equipment and certainly did not purchase an ongoing manufacturing operation which required all new permits and compliance with all environmental requirements related to the new business set-up by Premier and operated. Based on the foregoing, there is no basis to consider the Application and the amount set forth in the same as properly chargeable against the Debtor as a cost of administration pursuant to Section 503(a) of the Bankruptcy Code.

Accordingly,

ORDERED, ADJUDGED AND DE-CREED that Application for Allowance and Payment of Administrative Expenses (Doc. No. 605) be, and the same is hereby, denied.